SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00128-AN** |
| | **3:25-cr-00208-AN** |
| v. | |
| | **GOVERNMENT'S SENTENCING** |
| **ELVIN ANTONIO SANTOS-CHAPAS,** | **MEMORANDUM** |
| **Defendant.** | |

### Introduction

Defendant Elvin Antonio Santos-Chapas is before the Court for sentencing following the entry of guilty pleas to the charges of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), in case number 3:25-cr-00128-AN (referred to herein as case #1); and illegal reentry, in violation of 8 U.S.C. § 1326(a), in case number 3:25-cr-00208-AN (referred to herein as case #2).

**Government's Sentencing Memorandum** **Page 1**

In case #1, Santos-Chapas showed up to deliver fentanyl to undercover police officers in March 2025, and additional fentanyl was seized from his residence. In case #2, Santos-Chapas re-entered the United States without approval, after previously being removed from the United States.

In case #1, the United States recommends a sentence of 60 months custody (the mandatory minimum), followed by four years of supervised release. In case #2, the United States recommends a sentence of 46 months custody, followed by three years of supervised release, to run concurrently with case #1.

**Background**

**A.    The Offense Conduct**

Case #1

In March 2025, law enforcement received a tip about a drug dealer selling fentanyl in Portland. PSR ¶ 17. Investigators contacted the drug dealer (later identified as the defendant, Elvin Santos-Chapas) and ordered half an ounce of fentanyl. *Id.* Santos-Chapas agreed to meet later that same day in Portland. *Id.*

Santos-Chapas and his significant other subsequently arrived at the meeting location in their vehicle. PSR ¶ 18. Investigators found approximately 29 gross grams of fentanyl on the front passenger floorboard of the vehicle, near where the significant other had been sitting. *Id.* They also found two phones in the vehicle, including the phone used to organize the controlled purchase. *Id.*

Through further investigation, on March 27, 2025 (later that night of Santos-Chapas's arrest), HSI and PPB executed a federal search warrant on Santos-Chapas's residence, which he

**Government's Sentencing Memorandum**                                      **Page 2**

shared with his significant other and nine-year-old daughter. PSR ¶ 20. (At the time of the warrant, the daughter was being cared for by a relative and was not at home. PSR ¶ 19). Within the residence, they found approximately 31 gross grams of fentanyl powder, approximately 239 gross grams of blue counterfeit fentanyl pills, and $848 US Currency. PSR ¶ 20.

On April 9, 2025, a federal grand jury returned an indictment charging Santos-Chapas with a single count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi).

Case #2

In a separate investigation, Homeland Security Investigations (HSI) reviewed Santos-Chapas's criminal history and immigration record. PSR ¶ 22. HSI learned that Santos-Chapas had been found in the United States and removed eight times between 2004 and 2019. *Id.* There was no record of Santos-Chapas lawfully re-entering the United States after his removal. PSR ¶¶ 3, 22.

On May 13, 2025, the grand jury returned an indictment charging Santos-Chapas with one count of illegal re-entry, in violation of 18 U.S.C. § 1326(a).

**B.    The Plea Agreement & Guideline Computations**

On January 8, 2026, Santos-Chapas pleaded guilty to possession with intent to distribute fentanyl (count one) in case #1, and illegal reentry (count one) in case #2. He has accepted responsibility in a timely manner.

The government believes that the correct base offense level calculation for the defendant is level 26, as recommended in the plea agreement by the parties. This is due to the drug weight in this case being marginally close to the cutoff between level 26 and 28, which is 280 grams of

fentanyl. The drug weight seized from Santos-Chapas was approximately 300 gross grams of fentanyl, but that weight included packaging. PSR ¶ 21. The government does not have a net weight, and it is likely that the net weight is on the cusp of level 26 and level 28. The level 26 is a more conservative estimate that was agreed upon. PSR ¶ 9. Other than this objection to the base offense level, the government agrees with the guideline calculations in the presentence report.

With the base offense level of 26, and the government's recommended variance of two levels under 18 U.S.C. § 3553(a) for early resolution, Santos-Chapas's total offense level, including the variance, would be a level 21.

Consistent with the plea agreement, in case #1, the United States recommends a sentence of 60 months custody (the mandatory minimum), followed by four years of supervised release. In case #2, the United States recommends a sentence of 46 months custody, followed by three years of supervised release, to run concurrently with case #1.

## Argument

### A.    18 U.S.C. 3553(a) Sentencing Factors

There are factors that district courts take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

**Government's Sentencing Memorandum**                                                      **Page 4**

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

The § 3553(a) factors warrant the sentence requested by the government in this case, including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of our criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

B.      Analysis of Sentencing Factors

The government's requested sentences of 60 months custody (the mandatory minimum) in case #1, and 46 months custody in case #2 are appropriate considering the circumstances of these cases, and Santos-Chapas's history and characteristics.

Santos-Chapas was involved in selling fentanyl in Portland in the spring of 2025. This crime is serious because it involves fentanyl—a dangerous drug that can be lethal even in small amounts. *See* DEA Drug Fact Sheet – Fentanyl (Oct. 2022), available at https://www.dea.gov/sites/default/files/2022-12/Fentanyl%202022%20Drug%20Fact%20Sheet.pdf . Santos-Chapas contributed to the spread of this poisonous drug in our community by his conduct.

**Government's Sentencing Memorandum**                                                                                            **Page 5**

Santos-Chapas's criminal history includes two prior drug-related convictions—delivery of a controlled substance and conspiracy in 2003 and distributing/offering/arranging to distribute a controlled substance in 2010. PSR ¶¶ 49, 51. He also has multiple prior immigration-related convictions from 2004, 2008, 2010, and 2018. PSR ¶¶ 50, 52, 54, 55. This includes an illegal reentry conviction from 2018. PSR ¶ 55.  Given this prior history, Santos-Chapas was on notice that he was not allowed to sell drugs, and that he needed permission before re-entering the United States.

The presentence report contains mitigating information about Santos-Chapas's background and life in Honduras, which is appropriate for the Court to consider in sentencing him. PSR ¶¶ 61-67. Santos-Chapas also accepted responsibility in a timely manner in this case.

Santos-Chapas is a citizen of Honduras, and he will be removed from the United States back to Honduras after the conclusion of his custodial sentence in this case. PSR ¶ 5. A term of supervised release is appropriate, though. If Santos-Chapas re-enters the United States unlawfully during that time period, he will be subject to additional consequences as conditions of supervised release (as well as potentially new charges).

The government's requested sentences promote respect for the law, provide just punishment, and afford adequate deterrence by holding Santos-Chapas accountable for his conduct.

## Conclusion

Based on the foregoing, the United States recommends a sentence of 60 months custody (the mandatory minimum), followed by four years of supervised release in case #1. In case #2,

**Government's Sentencing Memorandum**                                   **Page 6**

the United States recommends a sentence of 46 months custody, followed by three years of

supervised release, to run concurrently with case #1.

Dated: March 11, 2026                                   Respectfully submitted,

                                                        SCOTT E. BRADFORD
                                                        United States Attorney

                                                        /s/ *Cassady A. Adams*
                                                        CASSADY A. ADAMS, CO Bar #48807
                                                        Assistant United States Attorney